[No. 960. Decided December 26, 1893.]

## T. W. SOULES, *Appellant*, v. GEORGE D. McLEAN, ELLA R. McLEAN AND W. F. McKAY, *Respondents.*

PARTNERSHIP IN LANDS — RESULTING TRUST — SUFFICIENCY OF EVIDENCE.

In an action for an accounting between partners and to declare a trust in certain lands, the evidence showed that S., M. and the owner of the lands agreed to form a partnersnip for a term of two years for the platting and sale thereof; that M. was to advance moneys for the improvement and expenses of handling the land, and after the payment of such moneys, with $15 per acre to the owner, the profits were to be divided in the proportion of one-half to M. and one-fourth each to S. and the owner; that the contract of partnership was not put in writing, but the land was taken in the name of M. alone, for the purpose of facilitating its disposal; that M. represented to purchasers and others that S. had an interest in the land as co-partner; that the larger part of the money expended in improvements was put upon that part of the land remaining unsold, and which M. now claims as his individual property. *Held,* Sufficient to establish a co-partnership and a resulting trust in favor of S. in one-fourth of said lands.

It being the duty of the clerk, under Laws 1891, p. 345, §15, to transcribe all the pleadings, orders, notices, appeal bonds, etc., upon the taking of an appeal, fees therefor must be allowed in the supreme court, although much of the matter may be unnecessary for the hearing on appeal.

The clerk is not authorized to tax fees for approving appeal and *supersedeas* bonds.

*Appeal from Superior Court, Skagit County.*

*Sinclair & Smith,* for appellant.
*Million & Houser,* for respondents.

The opinion of the court was delivered by

SCOTT, J.—This is an action in equity, brought by plaintiff for the purpose of closing up the affairs of a co-partnership consisting of himself and the respondents

McKay and George D. McLean. He asked for an accounting, and that the defendant George D. McLean, in whose name certain real estate stood which the plaintiff claimed belonged to said co-partnership, be declared to be holding the same as trustee, and especially as a trustee of the plaintiff of a one-fourth interest therein, which he alleged to be his individual proportion of, or interest in, said lands; and also that said McLean be required to account for certain moneys, notes, contracts and evidences of indebtedness which had been received by him in the conduct of the firm's business.

The lands in question consist of a large portion of the townsite of the town of Burlington, in Skagit county. An option to buy these lands had been granted in January, 1890, by the defendant McKay, who was the original owner thereof, to the plaintiff and three other persons not parties to this action. Near the expiration of said year it seemed likely that said persons would be unable to comply with the terms of said purchase, whereupon plaintiff sought to effect a new arrangement whereby another company would be formed to take said lands, and obtained permission from McKay to do so if he could. With this in view he approached the defendant McLean and informed him of said prior arrangement and of its being likely to fall through, and his desire to effect a new arrangement whereby said lands could be taken, and of the terms upon which the same could be procured from McKay.

The lands comprised several hundred acres in quantity, and he informed McLean that McKay would dispose of the same at the rate of fifteen dollars per acre and an interest in the profits that might be made from platting the same and selling to other parties; and furthermore, that McKay desired to procure a loan of several thousand dollars.

Plaintiff contends that McLean was anxious to effect the

proposed arrangement, and that it was agreed between himself and the defendants McKay and said McLean, that they would and that they did form a co-partnership for the purpose of taking an option on said lands at the rate of fifteen dollars an acre, and platting the same as a townsite, and that they were to make various improvements thereon and place said lands when platted upon the market. That the price of fifteen dollars per acre and the expense of platting and of making such improvements as should be made, together with other necessary expenditures, should be charged up as expenses, and all sums received over the cost price and such expenditures should be divided between said parties, one-half to McLean and one-fourth to plaintiff and one-fourth to McKay; that a written contract to this effect was never executed by said parties; that one was drawn by McLean but that he, some time subsequently, came to plaintiff's residence in said town of Burlington and informed him, in the presence of his wife and daughter, that he had reduced said agreement to writing, but had not brought it with him because he had thought of a better arrangement; that it was likely to embarrass them a good deal in disposing of said lands if the legal title was allowed to remain in McKay, for the reason that he was absent from said town and county a large portion of the time, and that it would be difficult to find him to execute conveyances and attend to other necessary business; and for that reason he thought it better that the title to said lands, or a portion of them, be conveyed outright; and upon being asked in whose name he proposed to have the title, he said that as he was to advance the money, he thought it would be no more than right, as affording him additional security therefor, that the title should be taken in his name. Some further conversation was had in relation thereto, and subsequently an arrangement was effected whereby several hundred acres of said land was deeded by McKay to McLean, and the same

was thereafter platted as previously talked of, and improvements were made thereon in the way of building a school house, grading and planking streets, clearing said lands, etc.; and certain papers were executed appointing plaintiff and McKay agents for the purpose of effecting sales of said lands to other parties.

The defendant McLean did not reside at Burlington aforesaid, and McKay was away therefrom a large portion of the time. Sales were negotiated by plaintiff of various tracts to outside parties, and money and evidences of indebtedness received therefor, which were delivered to McLean as custodian of the firm's property. Several thousand dollars were expended in the way of making improvements upon said lands; but none of said amounts are definitely apparent from the testimony. The books, contracts, etc., by which it is claimed the same appear, were admitted in evidence.

It is further contended by plaintiff that, upon the expiration of the time limited for said co-partnership to continue, all lands remaining unsold were to be divided between the members of said firm, of which plaintiff was to receive one-fourth.

The defendants answered, denying all the material allegations of the complaint, but admitted in their testimony that a co-partnership was formed for the purposes claimed, to continue for two years, but denied that either plaintiff or McKay was to have any interest in the lands remaining unsold at the expiration thereof.

The court below dismissed the cause, and plaintiff appealed. Notwithstanding the fact that the learned judge of said court heard the witnesses testify, we are unable to agree with the conclusions reached by him upon the evidence, which appeals to us so strongly in favor of the plaintiff that we are constrained to reverse the findings of the lower court thereon. We deem it unnecessary to set

the evidence forth in detail, or to give more than a brief summary of it.

The evidence upon the part of the plaintiff consisted of the testimony of himself and his wife and daughter, and several persons who had purchased some of the lands in question, or who had negotiated therefor, many of them being entirely disinterested in the result of the case. From the testimony of these disinterested witnesses it appears that the defendant McLean, upon a number of occasions, spoke of plaintiff as being part owner, partner and part proprietor in the ownership of said lands; and from the testimony of the plaintiff and his wife and daughter it appeared that upon the occasion of defendant McLean's calling at their house when he proposed the arrangement with regard to taking the title to the lands in his own name, that he expressly stated that the effect of it would be that he would hold the same only as a trustee of the co-partnership.

The testimony of McLean as to these matters is not satisfactory as supporting his contention with reference to the agreement. Some of these statements, so claimed to have been made by him, he admitted to be true; he denied some of them, and could not remember with regard to others. He admitted having written a letter to one Wilson, who was negotiating for a millsite upon said lands, which letter was introduced in evidence, and which clearly referred to the plaintiff as a part owner of the lands in controversy.

McKay testified in favor of McLean and apparently against his own interests. He testified that neither himself nor the plaintiff was to have any interest in the lands remaining unsold, but that the same were to belong to McLean exclusively, at the expiration of the time limited for their co-partnership to continue; that he was to get fifteen dollars per acre for the land conveyed and one-fourth

of the profits arising from such sales as should be made, whatever there might be; that all expenses for improvements, etc., were to be first paid from the moneys received from the sales. He further testified that said land was of the value of thirty dollars per acre. Under the agreement, according to his testimony, he would be compelled to part with all of said land for the sum of fifteen dollars per acre and for the further sum, much or little as it might be, arising from a one-fourth interest in such profits as might be made from the lands that should be sold, if any, during the co-partnership, after paying for all improvements upon the whole of said lands, and other expenses.

The defendant Ella R. McLean, and two other witnesses who were called in to advise McKay with regard to the transactions in question during certain negotiations had at the city of Olympia, between himself, McLean and the plaintiff, at which time the title was conveyed by McKay to McLean of certain of the lands, and a mortgage executed by him to McLean upon the balance, for moneys loaned by McLean to him, testified for the defendants. Said mortgage contained an option or agreement to purchase the mortgaged lands, by virtue of which McKay agreed to convey the same to McLean at the price aforesaid. The lands conveyed and the lands mortgaged being the whole of the lands which plaintiff had previously, with others, obtained the option to purchase as aforesaid. And plaintiff executed a quitclaim deed to convey his interest in said lands under said original option. Written authority to act as agent was also executed at that time by McKay to McLean and the plaintiff, which writing recites the terms of the agreement except with reference to certain lots or tracts which were to be selected by the individual members of the firm and were to belong to each separately, and except it said nothing with regard to any disposition of the lands which should remain unsold. It was con-

tended by plaintiff that this authority to act as agent was executed at the instance of McLean, who represented to him that it would be necessary to have something to show intending purchasers that he had authority to negotiate sales, as the legal title to the lands stood in him.

It is evident that these other witnesses who testified for the defendants knew nothing of the prior talks or arrangements between the parties.   It appears that they supposed that the transactions there had evidenced the whole agreement between the parties.   It appears from the testimony that the larger portion of the money expended in making improvements was expended upon that part of the land which is still unsold, and which McLean claims is his individual property.   It is also contended by McLean that the expenditures for improvements exceed the amount of moneys received from such sales as were made by several thousand dollars.

It further appears that the moneys paid for purchases made by McLean under the option aforesaid contained in the mortgage were charged up as expenses against the copartnership, as well also as the taxes paid by him on the lands.   It also appears that McLean was secured for all moneys advanced and paid by him in said transactions by virtue of said arrangement, and that he was to receive an agreed rate of interest thereon.

The general manner of making improvements upon the whole of said lands and the charging of all expenses against the co-partnership, together with the fact that contemplated sales to outside parties might be few and amounts realized therefrom uncertain and perhaps trifling compared with the amounts invested and expended, tend very materially to support the claim of the plaintiff that McLean was to hold all of said lands in trust for the co-partnership; and under said view the transaction was apparently a profitable one for all parties, while under the contention of the de-

fendants it might result disastrously to all except McLean, and especially against the plaintiff who was to devote his entire time to the co-partnership business, and which it appears he did do, and that he had received at most but very small recompense therefor individually.

Of course, the fact that it might so result would not be conclusive evidence that the parties did not make a hard bargain so far as plaintiff is concerned, but it is a circumstance to be taken in connection with the other testimony as supporting the contention of the plaintiff.

We·are of the opinion that the cause must be reversed, and remanded with instructions that an accounting be had, upon the evidence introduced, and such further evidence, if any, as the lower court may permit to be introduced for that purpose, upon a proper showing, of the business and transactions of said firm and its members; especially of all moneys and property received by the defendant George D. McLean, and of all moneys expended by him for the firm; and that said defendant, George D. McLean, be declared a trustee for said firm and its members, in the proportions stated, of all lands unsold, and that the amount thereof be ascertained; and that in case he has expended more moneys for the firm than he has received, that he have a lien on the lands unsold for the amount thereof, with interest thereon as per the agreement; and that said indebtedness to him shall first be paid out of any proceeds arising from the collection of notes and evidences of indebtedness to the firm, and arising from future sales ordered by the court, if any; and that a full accounting be had of all the business of said firm; and for such other relief and proceedings as may be necessary to dispose of the co-partnership matters and property in accordance with the views here expressed, and to protect the rights of the parties meanwhile.

And further, that, as it appears the defendant Ella R.

McLean has no interest in the property of said firm or in
said lands, except such as she may have by way of a com-
munity interest, if any, as the wife of said George D. Mc-
Lean, that it be adjudged that she has no interest in the
proportion of all the said property and lands belonging to
plaintiff.

Reversed and remanded accordingly, the testimony and
exhibits to be remitted to said superior court of Skagit
county.

Hoyt and Stiles, JJ., concur.

Dunbar, C. J., and Anders, J., not sitting.

## ON MOTION TO RE-TAX COSTS.

Scott, J.——A motion to re-tax costs, and to strike there-
from certain items taxed as fees of the clerk of the superior
court, which relate to filing and making copies of the notice
of appeal, the appeal bond, the bond for stay of proceed-
ings, and for approving said bonds, and to disallow $40 of
the $91 taxed for making the transcript, on the ground that
said sum of $40 was incurred for transcribing the original
complaint and answer, which it is claimed was unnecessary
as there had been amended pleadings filed, has been made
and submitted to the court by stipulation, without argu-
ment, and without any proof as to how much the cost of
transcribing said original pleadings by said clerk amounted
to.

It seems that this appeal was taken under the appeal law
of 1891, which, by § 15, p. 345, made all of such matters a
part of the transcript.

Much of it was unnecessary to a hearing of said cause in
this court, and the expense of transcribing the same might
have been avoided by the parties by taking action at the
proper time, but it having been the duty of the clerk to
transcribe it otherwise, such action by the respondents is
now too late.

The item of $2 for approving said bonds will be disallowed, as we are unaware of any law authorizing the clerk to approve the same. Otherwise the motion will be denied.

DUNBAR, C. J., and ANDERS, HOYT and STILES, JJ., concur.